UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES<br><br>              Petitioner,<br><br>    -v-<br><br>SIRIUS XM RADIO INC.,<br><br>              Respondent. | 24-cv-413 (JSR)<br><br><u>OPINION AND ORDER</u> |

JED S. RAKOFF, U.S.D.J.:

On January 19, 2024, respondent Sirius XM Radio, Inc. ("Sirius") removed this case to federal court, invoking this Court's jurisdiction under 28 U.S.C. § 1331. On January 31, 2024, petitioner the State of New York (the "State") moved to remand the case back to the state court where it was initially filed. <u>See</u> Mem. of Law in Supp. of the Att'y General's Mot. to Remand ("State Opening Br."), ECF No. 9. After full consideration of the parties' written submissions, the Court granted the motion to remand by "bottom-line" order dated February 22, 2024. <u>See</u> 2/22/24 Order, ECF No. 16. This Opinion explains the reasons for that ruling and directs the entry of final judgment and the closing of the case.

**I.  Background**

On December 20, 2023, the State filed a petition against Sirius in the Supreme Court of New York, alleging that Sirius's cancellation

procedures violated New York State law by making it too difficult for customers to cancel their Sirius subscriptions. Pet., ¶¶ 1-9, ECF No. 4-1.[1] The petition asserts five causes of action against Sirius: (1) engaging in fraud in violation of New York Executive Law § 63(12); (2) engaging in acts proscribed by New York General Business Law § 349 in violation of New York Executive Law § 63(12); (3) engaging in deceptive business practices in violation of New York General Business Law § 349; (4) engaging in "unlawful service offer practices in violation of [New York] General Business Law § 527-a"; and (5) engaging in acts proscribed by the Restore Online Shoppers' Confidence Act ("ROSCA") in violation of New York Executive Law § 63(12). Id. ¶¶ 89-107. For relief, the petition seeks an accounting, restitution, damages, disgorgement, civil penalties, and a permanent injunction to prevent Sirius "from violating Executive Law § 63(12), GBL §§ 349 and 527-a, and ROSCA, and from engaging in fraudulent, deceptive, and illegal practices alleged herein." Id. at 27-28.

On January 19, 2024, Sirius removed the case to federal court, invoking 28 U.S.C. § 1331 as the basis for this Court's jurisdiction. See Notice of Removal, ¶¶ 3-4, ECF No. 4. On January 31, 2024, the

---

[1] The State brought this lawsuit as a special proceeding, the purpose of which is to provide "an expeditious means for the Attorney-General to prevent further injury and seek relief for victims of business fraud." People v. Apple Health & Sports Club, 206 A.D.2d 266, 268 (1st Dep't 1994). This procedural mechanism is unique to state law but roughly akin to a motion for summary judgment in federal court. See N.Y. C.P.L.R. § 409(b); People v. Telehublink Corp., 301 A.D.2d 1006, 1007 (3d Dep't 2003).

State moved to remand the case back to state court for want of jurisdiction. See generally State Opening Br.

## II.  Legal Standard

28 U.S.C. § 1441(a) permits a defendant to remove a case from state to federal court, in "the district and division embracing the place where [the] action is pending," if the federal district court would "have original jurisdiction" over the action. The Court must "construe the removal statute narrowly, resolving any doubts against removability out of regard for the rightful independence of state governments." State by Tong v. Exxon Mobil Corp., 83 F.4th 122, 132 (2d Cir. 2023).[2] "The presumption against federal jurisdiction is especially strong in cases . . . involving States seeking to vindicate quasi-sovereign interests in enforcing state laws and protecting their own citizens from deceptive trade practices." In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014). "The burden of proof to establish that removal to federal court was proper falls upon the removing party." De Masi v. Schumer, 608 F. Supp. 2d 516, 520 (S.D.N.Y. 2009).

## III.  Discussion

Here, Sirius invokes 28 U.S.C. § 1331 as the basis for this Court's jurisdiction. Under 28 U.S.C. § 1331, a district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Most cases that

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

fall within the purview of this statute are lawsuits where "federal law creates the cause of action asserted." <u>Gunn v. Minton</u>, 568 U.S. 251, 257 (2013). Here, however, the petition does not assert any federal cause of action. Instead, the State has exclusively brought causes of action that originate under New York State law.

That, however, does not end the Court's inquiry. For there is "a special and small category of cases" where federal question jurisdiction can exist "even where a claim finds its origins in state rather than federal law." <u>Id.</u> at 258. To fall within this limited category of cases, "a federal issue" must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Id.</u> This "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312 (2005). Sirius contends that this case falls within that "special and small category of cases" because the fifth claim, under New York Executive Law § 63(12), is predicated on a violation of ROSCA, a federal law. <u>See Gunn</u>, 568 U.S. at 258; Pet. ¶¶ 106-07.[3]

_____

[3] Throughout its opposition brief, Sirius references statements made by the New York Attorney General in a press release about this case, which, Sirius claims, illustrate that this lawsuit involves federal claims. However, these statements are completely irrelevant because

As relevant here, New York Executive Law § 63(12) provides that:

> Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages. . .

The statute then defines the terms "persistent fraud" and "illegality" to "include continuance or carrying on of any fraudulent or illegal act." Id. Courts have interpreted this provision to mean that "'[a]ny conduct which violates state or federal law or regulation is actionable' under Executive Law § 63(12)." FTC v. Shkreli, 581 F. Supp. 3d 579, 627-28 (S.D.N.Y. 2022) (quoting People ex rel. Vacco v. World Interactive Gaming Corp., 714 N.Y.S.2d 844, 848 (N.Y. Sup. Ct. 1999)). Here, the predicate violation of the State's fifth cause of action is ROSCA, a federal law which renders it:

> unlawful for any person to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature . . . unless the person . . . provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account.

---

the Court must determine whether "arising under" jurisdiction exists based solely upon the face of the complaint. See State by Tong, 83 F.4th at 132 ("Our analysis of whether a case arises under the laws of the United States is governed by the well-pleaded complaint rule. Under that rule, federal-question jurisdiction generally exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

15 U.S.C. § 8403(3). Nonetheless, for the reasons discussed below, the Court finds that the State's fifth cause of action does not create federal jurisdiction.

### a. Necessarily Raised

The first element of the Grable-Gunn test is that the "federal issue [must be] . . . necessarily raised." Gunn, 568 U.S. at 258. "A state law claim necessarily raises federal questions where the claim is affirmatively premised on a violation of federal law." New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 315 (2d Cir. 2016). On the other hand, "if a court could resolve the case without reaching the federal issues, then the claims do not necessarily raise a federal issue." State by Tong, 83 F.4th at 140.

The Court finds that the first element is satisfied. The fifth claim is plainly predicated on a violation of federal law, as Sirius's purported violations of ROSCA are the basis for the State's allegation that Sirius engaged in conduct that is violative of New York Executive Law § 63(12). See Pet. ¶¶ 106-07 ("As set forth in the preceding paragraphs, Sirius has engaged in repeated and persistent violations of ROSCA through its cancellation policies and procedures that are not simple. Consequently, Sirius has engaged in repeated and persistent illegality in violation of Executive Law § 63(12)."). Additionally, the fact that the Court cannot award the relief requested by the State without reaching the federal question is further evidence that the Court must reach the federal issue to resolve this case. See Pet., at 27 (specifically requesting that the Court "[p]ermanently enjoin[]

Respondent from violating . . . ROSCA").[4] Accordingly, the first element is satisfied.

### b. Actually Disputed

The Court now turns to the second element. The "actually disputed" requirement is met when the parties have a "dispute respecting the effect of federal law." Gunn, 568 U.S. at 259 (finding the requirement satisfied where the parties disputed the applicability of the experimental-use exception). Here, Sirius represents that it "will vigorously dispute the State's interpretation of simple mechanism" in ROSCA "and offer its own affirmative interpretation of that term." Resp't Mem. of Law in Opp'n to Mot. to Remand ("Sirius Opp'n Br."),

---

[4] The State's argument to the contrary is unavailing. The State argues that because all of the alleged statutory violations stem from "the same burdensome cancellation procedures employed by Sirius," a permanent injunction enjoining Sirius from violating only the relevant state laws would have the same effect as enjoining Sirius from violating the relevant state laws and ROSCA. See Reply Mem. of Law in Further Supp. of Mot. to Remand ("State Reply Br."), at 3, ECF No. 12. While the effect of both of those permanent injunctions may be the same, the Court cannot award the permanent injunction requested here (which specifically asks the Court to enjoin Sirius from violating the relevant state laws and ROSCA) without reaching the federal issue. See Pet., at 27. Accordingly, this case is distinguishable from the cases that the State cites, where the courts did not have to reach the federal issue for the plaintiff to prevail on all its claims and/or obtain all the relief sought. See, e.g., Caggiano v. Pfizer, Inc., 384 F. Supp. 2d 689, 690 (S.D.N.Y. 2005); People v. First Am. Corp., No. 07 Civ. 10397, 2008 WL 2676618, at *1, *3-*4 (S.D.N.Y. July 8, 2008); Hiciano v. Tower West, Inc., No. 15-CV-2117, 2015 WL 3606370, at *3 (S.D.N.Y. June 9, 2015); In re Lehman Bros. Sec. & ERISA Litig., No. 09 MD 02017, 2012 WL 983561, at *7-*8 (S.D.N.Y. Mar. 22, 2012); Clark v. Bay Park Ctr. For Nursing & Rehab., No. 19-cv-506, 2019 WL 3852430, at *3 (S.D.N.Y. Aug. 16, 2019).

at 11, ECF No. 11.[5] The implication of that representation is that Sirius believes its cancellation procedures are "simple" within the meaning of ROSCA and thus permissible, whereas the State believes Sirius's procedures are not "simple" and thus violative of ROSCA. Accordingly, the Court finds that Sirius has sufficiently demonstrated that the federal issue is actually disputed.

### c. Substantial

Next, for the substantiality requirement, the Court must evaluate "the importance of the issue to the federal system as a whole," as "it is not enough that the federal issue be significant to the particular parties in the immediate suit." Gunn, 568 U.S. at 260. Sirius attempts to manufacture substantiality by pointing to the structure of ROSCA, the need for uniform interpretation of federal law, the FTC's rulemaking in this area, and the paucity of case law on the meaning of "simple" in ROSCA. The Court, however, finds Sirius's arguments unpersuasive, and for the reasons discussed below, finds that the federal issue raised here is insubstantial.

Sirius first argues that the structure of ROSCA, in particular the role that ROSCA "delegate[s]" to the FTC in "defining, implementing, and enforcing [ROSCA's] broad standards," illustrates that the federal issue raised here is substantial. See Sirius Opp'n Br., at 12. The problem with this argument, however, is it overstates

_____

[5] At oral argument, Sirius further clarified that the Sirius disputes the meaning of "simple mechanism" as well as the State's factual allegations about Sirius's cancellation procedures. See 2/21/24 Tr. 3:19-6:6, ECF No. 17.

the powers that ROSCA grants to the FTC, while at the same time overlooking the role that Congress expressly reserved for State Attorneys General in continuing to exercise the powers granted to them under state law.

To start, Sirius overplays the FTC's role under ROSCA. It is true that the FTC is permitted to enforce ROSCA "in the same manner, by the same means, and with the same jurisdiction, powers, and duties" as the FTC has under the Federal Trade Commission Act. 15 U.S.C. § 8404(a). And the FTC has, indeed, brought lawsuits to enforce ROSCA. See, e.g., FTC v. Hornbeam Special Situations, LLC, 308 F. Supp. 3d 1280, 1293-94 (N.D. Ga. 2018). However, even the FTC has expressly acknowledged that although "Congress charged the Commission with *enforcing* ROCSA, it did *not* direct the FTC to promulgate *implementing regulations*." Enforcement Policy Statement Regarding Negative Option Marketing, 86 Fed. Reg. 60822, 60824 (Nov. 4, 2021) (emphasis added). Accord Negative Option Rule, 88 Fed. Reg. 24716, 24718 (Apr. 24, 2023) (same). Sirius thus overstates the extent of the FTC's authority with respect to the interpretation, enforcement, and implementation of ROSCA, as the FTC was never directed by Congress to issue implementing regulations.

Worse yet for Sirius, ROSCA expressly reserves the right of the New York Attorney General to do exactly what the State did here: bring suits in state court under state law. It is true as far as it goes that ROSCA authorizes State Attorneys General to "bring an action" under ROSCA "on behalf of the residents of the State . . . to obtain appropriate injunctive relief" in federal court, while also requiring

the State Attorneys General to provide "written notice" of any such action to the FTC. 15 U.S.C. § 8405(a)-(b). But Sirius overinterprets this provision to mean that allowing the State to "wrap[] a ROSCA claim in state-law packaging" would "sidestep Congress's carefully defined cause of action." See Sirius Opp'n Br., at 13. Sirius is overlooking that the very same provision clarifies that "[n]othing in this section shall be construed to prevent the attorney general of a State . . . from exercising the powers conferred on the attorney general . . . by the laws of such State; or to prohibit the attorney general of a State . . . from proceeding in State or Federal Court on the basis of an alleged violation of any civil or criminal statute of that State." 15 U.S.C. § 8405(d)(2).[6] ROSCA thus does not foreclose the ability of the New York Attorney General, to exercise the powers granted to her under state law, to bring a related state claim in state court. The preservation of that power illustrates that the fact that ROSCA made the federal forum available to the New York Attorney General does <u>not</u> mean that any issue arising under ROSCA must be heard in a federal forum.

---

[6] Sirius attempts to avoid the clear import of this provision by relying on inapposite case law. See Sirius Opp'n Br., at 14 n.8. Sirius cites to cases in which courts found that savings clauses cannot create implied causes of action, authorize seeking remedies that are only available under other federal statutes, or preserve a state law claim that is inconsistent with federal law. See Middlesex Cnty. Sewage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 15-16 (1981); City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 125-27 (2005); AMG Cap. Mgmt., LLC v. FTC, 593 U.S. 67, 80-81 (2021); FTC v. Credit Bureau Ctr., LLC, 937 F.3d 764, 775 (7th Cir. 2019); ICOM Holding, Inc. v. MCI Worldcom, Inc., 238 F.3d 219, 223 (2d Cir. 2001). None of those legal principles is relevant here.

Next, Sirius cites to the need for uniform interpretation of ROSCA's "simple mechanism" requirement and the FTC's recent interest in developing guidance on ROSCA's "simple mechanism" requirement to illustrate the substantiality of the federal issue presented here. See S. Rep. No. 111-240, at 3 (ROSCA's "negative option provision would establish clear standards of disclosure and consent for sales that involve recurring charges."); Negative Option Rule, 88 Fed. Reg. 24716, 24718 (signaling the need for clarity about the simple mechanism requirement). The problem with this argument, however, is that the same could be said of <u>any</u> federal statute in which <u>any</u> agency plays <u>any</u> role in the interpretation and enforcement of the statute. That is because the need for the development of clear, uniform standards is true for any federal statute, and any agency tasked with the enforcement of a federal statute has a vested interest in signaling that the statute requires further elaboration. Thus, taken at face value, Sirius's argument cannot support a finding of substantiality, for otherwise courts would be required to find that a federal issue is substantial if it raises a statutory interpretation question in which an agency has expressed an interest.

Finally, Sirius asserts that the federal issue raised here is substantial because it is purely legal and would require the Court to break new ground, given the paucity of federal guidance on the meaning of "simple mechanism" in ROSCA. This argument is unpersuasive. For starters, there is some federal guidance on the meaning of "simple mechanism" in ROSCA. <u>See, e.g.</u>, <u>United States v. MyLife.Com, Inc.</u>, 567

F. Supp. 3d 1152, 1169 (C.D. Cal. 2021); Enforcement Policy Statement Regarding Negative Option Marketing, 86 Fed. Reg. 60822, 60826. Thus, while it may seem not that simple to define what "simple" means, the fact that the FTC and at least one other federal court have weighed in on this issue illustrates that the state court will not be writing against a blank slate and may not even need to break new ground to decide this case.

The more fundamental problem with Sirius's argument, however, is that it is not at all clear that the federal issue raised here is purely legal, rather than inextricably fact bound. Try as Sirius might, it cannot be ignored that Sirius has repeatedly stated that it will be challenging both the legal and factual predicates for liability. See, e.g., Sirius Opp'n Br., at 4 n.4, 11; 2/21/24 Tr. 4:25-5:1, 5:14-6:6, 15:18-20:3. And a case in which the issue is fact-bound, rather than purely legal, is far less likely to be useful to future parties and thus less likely to raise a substantial enough federal issue to merit the exercise of federal jurisdiction. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700-01 (2006).

At bottom, the federal issue in this case boils down to Sirius's contention that its cancellation procedures are simple and the State's contention that they are not. That is an inherently fact-intensive issue that will provide little guidance in future cases, which likely will involve completely different cancellation procedures. This case is thus far afield from other cases where the federal issue was important enough for the exercise of federal jurisdiction, such as

issues of broad importance to the national economy or the functioning of the government. See, e.g., Grable, 545 U.S. at 315; NASDAQ OXM Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1027 (2d Cir. 2014). The Court accordingly concludes the fact-intensive issue of whether a particular cancellation procedure is "simple" is not sufficiently important to the federal system as a whole and is thus not substantial.

### d. Federal-State Court Balance

Moreover, even assuming arguendo that the federal issue raised here was substantial, the Court still would find it improper to exercise jurisdiction because the fourth element of the Grable-Gunn test is not satisfied. The fourth element, "that the exercise of federal-question jurisdiction over a state law claim not disturb any congressionally approved balance of state and federal judicial responsibilities, focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." New York ex rel. Jacobson, 824 F.3d at 316. This requirement ensures that federal courts will only find federal jurisdiction when it "is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable, 545 U.S. at 313-14.

To start, exercising jurisdiction would upset the carefully articulated balance between state and federal courts that Congress set forth in ROSCA. Sirius argues that permitting this lawsuit to proceed in state court would be contrary to ROSCA's structure and Congress's preference that lawsuits like this one be litigated in federal court.

See Sirius Opp'n Br., at 18.[7] That is wrong. 15 U.S.C. § 8405 sets a specific balance: State Attorneys General are permitted to bring ROSCA claims in federal court to seek injunctive relief but any powers those Attorneys General have under state law to bring related state causes of action in state court are preserved. Here, the filing of the State's suit in state court comported with that division of labor. The New York Attorney is using powers that she was granted under state law to bring a special proceeding in "the supreme court of the state of New York" to protect consumers against "repeated fraudulent or illegal acts" in the "transaction of business," here, Sirius's alleged violations of not just ROSCA, but also New York General Business Law § 349 and New York General Business Law § 527-a. See New York Executive Law § 63(12); Pet. ¶¶ 93-96, 100-07. Because the ability of the New York Attorney General to bring this suit was expressly preserved by ROSCA, the Court finds that it would be inconsistent with the division of responsibilities that Congress set forth in ROSCA for the Court to exercise jurisdiction in this case.

Furthermore, it would be inappropriate to exercise federal jurisdiction because this case implicates the State's interests as a sovereign. This is a consumer-protection lawsuit brought by the State to enforce its own consumer-protection laws through a special

---

[7] Sirius's other arguments for why the federal forum is preferable (e.g., the FTC's rulemaking in this area and the lack of guidance on the meaning of "simple mechanism") are unpersuasive for the same reasons that those arguments were unpersuasive to show that the federal issue was substantial.

proceeding pursuant to a state statute that specifically selects the New York State Supreme Court as the proper forum for such a suit. <u>See</u> New York Executive Law § 63(12). Thus, not only would exercising federal jurisdiction disrupt the State's chosen forum for litigating this type of case, but it would also force the State to forgo the procedural mechanisms that are uniquely available to it in a special proceeding in a state forum to obtain "expeditious" relief. <u>See Apple Health & Sports Club</u>, 206 A.D.2d at 268.[8] Sirius's argument to contrary -- that the State is vindicating federal, not state, interests because the lawsuit seeks relief for all aggrieved consumers, not just New York consumers -- is misplaced. <u>See</u> Pet. at 27. To begin with, the State is seeking relief for all aggrieved consumers even on its purely state law claims, which Sirius could not seriously argue reflects an attempt to vindicate federal as opposed to state interests. Furthermore, seeking relief on behalf of all aggrieved customers based on conduct that is occurring in New York is part and parcel of the State's sovereign interest. <u>See, e.g.</u>, <u>People v. H&R Block, Inc.</u>, 58

---

[8] Sirius is correct that this Court could find a way to adapt the special proceeding to comport with the Federal Rules of Civil Procedure. <u>See</u> <u>Mitchell v. Lyons Pro. Servs., Inc.</u>, 109 F. Supp. 3d 555, 566 (E.D.N.Y. 2015) ("Th[e] need to mesh federal procedure with the unrecognized state vehicle of a special proceeding is not peculiar[,]" and "federal district courts in New York have long been called upon to accept, reject, or adapt this aspect of New York state practice."). However, it is not the Court's inability to adapt the special proceeding to comport with the Federal Rules of Civil Procedure that is, in and of itself, a barrier to the exercise of federal jurisdiction. Rather, it is a symptom of the larger problem of finding federal jurisdiction over a case brought by a State to enforce its own consumer-protection laws pursuant to a state law that selects a state forum.

A.D.3d 415, 417 (1st Dep't 2009); Telehublink Corp., 301 A.D.2d at 1009-10.

Finally, permitting removal in this case could meaningfully increase the number of cases that would be filed in federal court. That is because "it is not the 'rare' state consumer protection suit that involves alleged violations of federal law; instead, 'state courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes.'" In re Gen. Motors LLC Ignition Switch Litig., 69 F. Supp. 3d 404, 415 (S.D.N.Y. 2014) (quoting Nevada v. Bank of Am. Corp., 672 F.3d 661, 676 (9th Cir. 2012)). Because New York Executive Law § 63(12) permits the Attorney General to file a lawsuit based on business conduct rendered illegal by state or federal law, there is a meaningful risk that recognizing federal jurisdiction here would open the floodgates to analogous state suits premised on violations of other federal consumer protection statutes, suits that the State often brings. See State Reply Br., at 9.

In sum, the Court concludes that exercising jurisdiction in this case would disturb the balance between state and federal responsibilities and thus the fourth element of the Grable-Gunn framework is not satisfied.

## IV.  Conclusion

For the foregoing reasons, the Court, by Order dated February 22, 2024, granted the State's motion to remand the case back to state

court. The Clerk of the Court is hereby directed to issue final judgment dismissing the case on that basis and to close the case.

New York, NY
May 23, 2024

JED S. RAKOFF, U.S.D.J.